UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

AMADOU WANE and MERLANDE WANE,

      Plaintiffs,

v.                         Case No. 8:11-cv-2126-T-33AEP

THE LOAN CORPORATION, ET AL.,

      Defendants.

_____/

**ORDER**

The Wanes executed an Adjustable Rate Mortgage and Note
in 2006, and, after several years of making scheduled
payments, have become disenchanted with their lender, Bank
United, N.A.[1] The Wanes sought to rescind their Mortgage when
their monthly payments were scheduled to increase from
$1,213.05 to $3,264.29, and thereafter, ceased their
remittance of Mortgage payments altogether.[2] When notified
that their Mortgage was in default, the Wanes filed an action
to quiet title. Bank United, N.A. responded by filing its
counterclaims for breach of note and money lent. Cross

---

[1] This action involves two separate Defendants
identified as "Bank United": Bank United FSB and Bank United,
N.A. Bank United FSB was taken over by the FDIC and is no
longer a Defendant in this action. At this juncture, Bank
United, N.A. is an active Defendant and this Order addresses
the Motions filed by Bank United, N.A.

[2] In a recent submission, Bank United, N.A. indicates,
"Plaintiffs have been living in their house for almost 4 years
without paying a mortgage." (Doc. # 167 at 14, n.8).

motions for summary judgment on the claims and various motions to strike are before the Court.    After considering the parties' arguments and independently plumbing the record, the Court finds in favor of Bank United, N.A.

I.   **Factual Background**

     A.   **The Obligation and Default**

Amadou Wane ("Mr. Wane") executed and delivered an Adjustable Rate Note in the principal amount of $400,000.00 to Defendant The Loan Corporation on September 15, 2006, to refinance two then-existing loans from Wells Fargo, secured by the Wanes' residence located at 14614 Canopy Drive, Tampa, Florida. (Fallmann Aff. Doc. # 167-3 at 3, ¶ 11; Doc. # 49-1 at 2-7).   On that same day, the Wanes executed and delivered a Mortgage securing payment of the Note to The Loan Corporation. (Fallmann Aff. Doc. # 167-3 at 3, ¶ 12; Doc. # 151-1 at 13-26).   Later that day, the Note was sold to Bank United FSB as evidenced by the Allonge (Doc. # 49-1 at 9), and the Mortgage was assigned to Bank United FSB via an Assignment (Doc. # 151-3 at 1-2).

The Note and Mortgage replaced and satisfied the two existing mortgages on the Property. (Doc. # 151-2 at 13, 24). The excess funds from the refinance, $38,092.00, were paid to Mr. Wane via wire transfer. (Doc. # 151-2 at 26).

The Note and Mortgage went into default as a result of the Wanes' failure to make the required payment due on January 1, 2009, and all subsequent payments. (Fallmann Aff. Doc. # 167-3 at 4, ¶ 19). Bank United FSB sent the Wanes a Default Letter dated February 5, 2009. (Doc. # 49-1 at 11).

On May 21, 2009, Bank United FSB was taken over by the FDIC, and the FDIC subsequently sold the assets of Bank United FSB to Bank United, N.A. via a Purchase and Assumption Agreement. (Fallmann Aff. Doc. # 167-3 at 4, ¶ 17; Doc. # 57-1 - Doc. # 57-3).

On August 30, 2009, the Wanes sent The Loan Corporation a letter purporting to rescind their loan pursuant to the Truth in Lending Act ("TILA"), 15 U.S.C. § 1635, and Regulation Z, 12 C.F.R. § 226.23. (Doc. # 41-11). The timing of this letter coincided with a scheduled monthly Mortgage payment increase from $1,213.05 to $3,264.29. The Wanes carbon copied "Bank United" on the rescission letter. Id.

**B.   The State Court Proceedings**

On March 19, 2010, the Wanes filed an action to quiet title against The Loan Corporation in state court (case number 10-CA-006301), asserting that the Mortgage was unenforceable because it had been rescinded. (Doc. # 1-5 at 8). The Wanes named neither Bank United FSB nor Bank United, N.A. as a

3

defendant in the complaint.[3]  On September 7, 2010, the state court entered a final default judgment quieting title against The Loan Corporation.  Bank United, N.A. intervened in that case, and on August 5, 2011, Judge William P. Levens held an evidentiary hearing on whether the default judgment against The Loan Corporation should be vacated.  A complete transcript of that hearing is before this Court. (Doc. # 165-1 - Doc. # 165-2).

At the hearing, Judge Levens heard testimony from Patricia Fallmann, Bank United, N.A.'s Default Mediation Administrator of the Asset Conservation Division Default Administration. (Doc. # 165-1 at 19).  Judge Levens found Ms. Fallmann to be a credible witness competent to testify about the business records of Bank United, N.A. (Doc. # 165-3 at 2). Through Ms. Fallmann, Judge Levens admitted into evidence the Mortgage, the Allonge, the Assignment, the Purchase and Assumption Agreement, and other relevant documents. (Doc. # 165-1 at 31, 41, 43, 55).

During the hearing, Mr. Wane submitted that Bank United, N.A. lacked proof that it was the owner of the Note and

---

[3] On April 19, 2010, Bank United, N.A. filed a separate action  seeking foreclosure against the Wanes in state court, which is ongoing (case number 29-2010-CA-008594). (Doc. # 165 at 2, n.2).

4

Mortgage. (Doc. # 165-1 at 16).  The Court found against Mr. Wane on this issue. (Doc. # 165-3 at 2, ¶ (E)).

After the hearing, Judge Levens entered an order containing the following findings, among others, and setting aside the default judgment previously entered against The Loan Corporation:

> (A) The Plaintiffs took out a loan on September 15, 2006 from The Loan Corporation to refinance two then-existing loans from Wells Fargo, which indebtedness was secured by developed real property located at 14614 Canopy Drive, Tampa, Florida 33626.
>
> (B) The same day of that closing, the loan was assigned via an Allonge to Bank United, FSB (the predecessor to Bank United, and a banking entity that was taken over by the FDIC on May 21, 2009, and through a receivership absorbed by the new entity, BankUnited).  The subject loan became the property of BankUnited through the actions of the FDIC.
>
> (C) At the exact time when his loan payments were scheduled to escalate from $1,213.05 a month to $3,264.29 a month, Mr. Wane sought to rescind his loan by sending a letter dated August 30, 2009, to The Loan Corporation-even though Mr. Wane had been making loan payments to BankUnited for almost 3 years-at an address unconnected with either BankUnited, FSB or BankUnited.
>       . . . .
>
> (E) There is no evidence that the actual owner and holder of the note and mortgage, BankUnited, ever received the attempted rescission letter. . . . In fact, the credible testimony of Ms. Fallmann was that BankUnited did not learn of either the attempted rescission or the quiet title action until their lawyers found out about it while they were pursuing the separate foreclosure action against Mr. and Mrs. Wane

5

. . . in February 2011.

(Id. 1-2).

On August 10, 2011, two days after Judge Levens entered his order, the Wanes filed their "Amended Complaint to Quiet Title" against The Loan Corporation, Bank United, N.A. and the FDIC in state court. (Doc. # 2). The Wanes appealed Judge Levens' order to Florida's Second District Court of Appeal (Doc. # 165-4), which issued a per curiam affirmance. (Doc. # 165-5).

## C.   **Federal Court Proceedings**

The FDIC removed the Wanes' action to this Court on September 16, 2011. (Doc. # 1). The FDIC reached a settlement with the Wanes at mediation, and the FDIC has been dismissed from this action. (Doc. # 38).

On March 16, 2012, the Wanes filed the Second Amended Complaint, which is the operative complaint, against Bank United, N.A. and The Loan Corporation. (Doc. # 41). Therein, the Wanes seek to quiet title based on rescission pursuant to TILA, and in the alternative, seek to quiet title under state law arguing that their Mortgage is unenforceable, invalid, and void. This Court dismissed the Wanes' rescission claim on April 27, 2012. (Doc. # 46). Bank United, N.A. filed its answer, affirmative defenses, and counterclaims for breach of

note and money lent on May 11, 2012. (Doc. # 49).

The Wanes filed their answer and affirmative defenses to Bank United, N.A.'s counterclaims on July 23, 2012, listing the following defenses: (1) Bank United, N.A. failed to pay the required documentary stamps; (2) the signatures on the Note executed and delivered by the Wanes are invalid; (3) Bank United, N.A. is not entitled to attorneys' fees; (4) Bank United, N.A. lacks standing; (5) Bank United, N.A. has failed to state a claim against the Wanes; (6) Bank United, N.A. failed to give mortgage broker disclosure pursuant to Florida Statute § 494.0038(1)(a); (7) lack of assignment of the Note; (8) Bank United, N.A. failed to notify the Wanes of the assignment of the debt pursuant to Florida Statute § 559.715; (9) Bank United, N.A. failed to notify the Wanes of the assignment pursuant to TILA; (10) Bank United failed to make good faith estimate disclosures pursuant to 12 C.F.R. § 226.19(a); (11) denial of consideration and execution pursuant to Florida Statute § 68.06; (12) ineffective endorsement and assignment of the Note and Mortgage; (13) Bank United, N.A. failed to comply with paragraph 22 of the Mortgage; (14) Bank United, N.A. failed to comply with the National Housing Act, 12 U.S.C. § 170x(c)(5); (15) lack of consideration; (16) Bank United, N.A. is not a holder of the

note pursuant to Florida Statute § 671.201(21); and (17) unclean hands. (Doc. # 70).   Bank United, N.A. has not responded to these defenses.

In connection with these proceedings, Merlande Wane ("Mrs. Wane") was deposed on October 22, 2012. (Doc. # 166-1 - Doc. # 166-4).   Therein, she demonstrates that, although named as a Plaintiff, she has no personal knowledge whatsoever as to the facts of this suit.   In addition, in response to Bank United, N.A.'s interrogatories, Mrs. Wane answered "without knowledge" as to most of the questions and provided only vague responses to the remaining questions. (Doc. # 151-3 at 8-14).[4]

Bank United, N.A. filed its Motion for Summary Judgment (Doc. # 151) on November 30, 2012. The Wanes filed their Motion to Strike Bank United, N.A.'s Motion for Summary Judgment (Doc. # 162) and a Response in Opposition to the Motion for Summary Judgment (Doc. # 163) on January 7, 2013. Bank United, N.A. filed a Response in Opposition to the Wanes' Motion to Strike its Motion for Summary Judgment on January 22, 2013, and included amended affidavits. (Doc. # 167).   The

---

[4] For instance, in response to interrogatory # 14: "Please state whether you signed and executed documents on September 15, 2006 at a closing in the presence of a notary;" Mrs. Wane responded: "Plaintiff signed a lot of documents on September 15, 2006 in front of an individual." (Doc. # 151-3 at 11).

8

Wanes filed an "Objection" to Bank United, N.A.'s Response on February 6, 2013.  (Doc. # 170).  In addition, Bank United, N.A. filed a Motion to Strike the Wanes' affidavits filed in conjunction with the Wanes' Response in Opposition to Bank United, N.A.'s Motion for Summary Judgment on January 22, 2013. (Doc. # 166).  The Wanes filed a Response in Opposition to Bank United, N.A.'s Motion to Strike Affidavits on February 5, 2013. (Doc. # 169).

The Wanes filed their own Motion for Summary Judgment (Doc. # 155) on December 17, 2012, and filed a Supplement to their Motion for Summary Judgment (Doc. # 164) on January 16, 2013.  Bank United, N.A. filed a Response in Opposition to the Wanes' Motion for Summary Judgment on January 18, 2013. (Doc. # 165).  The Wanes filed an "Objection" to Bank United, N.A.'s Response on January 31, 2013. (Doc. # 168).

## II. **Motions to Strike**

Before delving into the summary judgment analysis, the Court will address the Motions to Strike. Bank United, N.A. moves to strike the Wanes' affidavits filed in support of the Wanes' Motion for Summary Judgment and in opposition to Bank United, N.A.'s Motion for Summary Judgment.  The Wanes, on the other hand, move to strike nearly all of the materials submitted by Bank United, N.A. in support of its Motion for

9

Summary Judgment.

Rule 12(f) of the Federal Rules of Civil Procedure authorizes this Court to strike from the record any "redundant, immaterial, impertinent, or scandalous matter." In addition, "affidavits filed in opposition to a motion for summary judgment which do not comply with Rule 56" are subject to a motion to strike. Hughes v. Amerada Hess Corp., 187 F.R.D. 682, 684-85 (M.D. Fla. 1999). Rule 56(c)(4) of the Federal Rules of Civil Procedure specifies that an "affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." This Court may strike an affidavit when it is a conclusory argument rather than a statement of fact, or when the affidavit is not based on personal knowledge. Story v. Sunshine Foliage World, Inc., 120 F. Supp. 2d 1027, 1030 (M.D. Fla. 2000).

### A.   Wane Affidavits

Mrs. Wane's affidavit (Doc. # 163-3 at 1) is subject to being stricken because she has demonstrated that she is wholly without personal knowledge in this case. During Mrs. Wane's deposition held on October 22, 2012, Mrs. Wane denied having any knowledge whatsoever about this case. When asked: "Why

are you suing Bank United?" She answered: "Can't you ask that question to my husband?" (Doc. # 166-1 at 23:15-16).  When pressed for an answer to this most basic question, she responded: "I don't really know." (<u>Id.</u> at 23:19).  She also indicated during her deposition that she did not know of any facts about this case (<u>Id.</u> at 26:17-21), that she did not remember anything about the questioned real estate closing (<u>Id.</u> at 50:25), and that she did not know what a mortgage is (Doc. # 166-2 at 37:17).  The Court strikes Mrs. Wane's affidavit because she has admitted that she lacks even an iota of personal knowledge about this case.

Bank United, N.A. has not demonstrated that Mr. Wane is completely unknowledgeable about this case, as was the case with Mrs. Wane.  Rather, Bank United, N.A. points out that Mr. Wane makes statements in his affidavits that are outside of the scope of his personal knowledge.  It is not necessary to replicate his affidavits here.  This Court is capable of separating the wheat from the chaff on a motion for summary judgment and will not rely on any portion of Mr. Wane's affidavits made outside the possible scope of his personal knowledge.  The Court denies the Motion to Strike as to Mr. Wane, but with the proviso that the Court has not accepted his affidavit statements *in toto.*

11

**B.**   **Patricia Fallmann's Affidavit and Bank Documents**

As noted, Ms. Fallmann is currently employed by Bank United, N.A. in the Asset Conservation Division Default Administration. (Fallmann Aff. Doc. #  167-3 at 2, ¶ 2). Importantly, she states in her affidavit:

> I have access to Bank United's business records, including the business records for and relating to the Plaintiffs' loan.  I make this affidavit based upon my review of those records relating to the Plaintiffs' loan and from my own personal knowledge of how they are kept and maintained.  The loan records for the Plaintiffs are maintained by Bank United in the course of its regularly conducted business activities and are made at or near the time of the event, by or from information transmitted by a person with knowledge.  It is the regular practice to keep such records in the ordinary course of a regularly conducted business activity.

(Id. at 3, ¶ 5).  Ms. Fallmann identifies and discusses the relevant evidence in this action, including: the Note, the Mortgage, the Allonge, the Assignment, the First Payment Letter, the Purchase and Assumption Agreement between the FDIC and Bank United, N.A., the Default Letter, and the HUD-1 reflecting the payment of documentary stamps.

The Wanes assert that Ms. Fallmann's affidavit and the evidence discussed therein should be stricken as inadmissible hearsay not falling within any recognized exception and that such evidence should also be stricken as unauthenticated.

Bank United, N.A. counters that the state court already received and admitted into evidence the questioned documents during a hearing held prior to the removal of this action by the FDIC, and that removed actions "continue from where the state court left off." (Doc. # 167 at 9)(citing <u>Lafayette Corp. Ltd. v. Bank of Boston</u>, 723 F. Supp. 1461, 1463 (S.D. Fla. 1989)).

This Court's review of the voluminous state court record reveals that most, if not all, of the questioned evidence was, indeed, admitted at a hearing before Judge Levens on the state court level. "After removal, orders issued by the state court are considered orders of the district court." <u>Johnston v. Tampa Sports Auth.</u>, 530 F.3d 1320, 1324 (11th Cir. 2008)(citing <u>Jackson v. Am. Sav. Mort. Corp.</u>, 924 F.2d 195, 198 (11th Cir. 1991)). However, the Court will independently evaluate the evidence to ensure that it complies with Rule 56.

As pointed out by Bank United, N.A., at the summary judgment stage, the Court is not obligated to strike hearsay. As explained in <u>McMillian v. Johnson</u>, 88 F.3d 1573, 1584 (11th Cir. 1996), the Court is allowed to consider "otherwise admissible evidence . . . submitted in inadmissible form at the summary judgment stage, though at trial it must be submitted in admissible form."

13

The Court determines that Ms. Fallmann's affidavit, and more importantly, the documents referenced therein, are not subject to being stricken as hearsay or otherwise.  The documents in question are records of a regularly conducted activity pursuant to Rule 803(6) of the Federal Rules of Evidence.  Ms. Fallmann's affidavit satisfies each of the requirements of Rule 803(6) and the relevant documents are therefore not subject to being stricken.[5]

### C.   **Jennifer Jones' Affidavit**[6]

The notary seal on Jennifer Jones' affidavit is deficient as it is missing the county in which the affidavit was notarized.  In addition, Bank United, N.A. failed to provide Ms. Jones' phone number to the Wanes in connection with its Rule 26, Fed. R. Civ. P., disclosures.  On these grounds, the Wanes seek an order striking Ms. Jones' affidavit. The Court denies the request to strike.  Bank United, N.A. filed an

---

[5] Although Ms. Fallmann's original affidavit is the subject of the Wanes' Motion to Strike, the Court notes that her affidavit has been superseded by an amended affidavit. The Court has considered Ms. Fallmann's amended affidavit, which was submitted to correct scriveners errors. (Doc. # 167-3).

[6] Jennifer Jones' signature appears on the Assignment and Allonge.  Ms. Jones has married and changed her name to Jennifer Kelly.  The parties refer to her as both Jennifer Jones and Jennifer Kelly. For ease of reference, this Court will refer to her as Jennifer Jones.

14

amended affidavit to correct the deficient notary seal. (Doc. # 167-4).

In addition, the Court determines that Bank United, N.A.'s failure to disclose Ms. Jones' phone number was harmless as described in Rule 37, Fed. R. Civ. P.  The Wanes were aware that Ms. Jones was a potential witness--her identity was disclosed--only her phone number was omitted.  It does not appear that the Wanes ever sought the omitted information at any point prior to bringing the present Motion to Strike.  The Wanes did not seek to depose Ms. Jones and did not file a motion to compel when they realized that the contact information was missing.  The Court declines to employ the draconian sanction of striking Ms. Jones' affidavit simply because her phone number was omitted during discovery, especially because the Wanes never voiced concern about the omission until now.[7]

## III. **Summary Judgment Standard**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the

---

[7] The Wanes also seek an order striking Joseph T. Pelt's affidavit.  This request is moot because the Court has not relied upon Mr. Pelt's affidavit in reaching its decision.

movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir. 1996) (citing Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 918 (11th Cir. 1993)). A fact is material if it may affect the outcome of the suit under the governing law. Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997).

The Court must draw all inferences from the evidence in the light most favorable to the non-movant and resolve all reasonable doubts in that party's favor. See Porter v. Ray, 461 F.3d 1315, 1320 (11th Cir. 2006). The moving party bears the initial burden of showing the Court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. Id. When a moving party has discharged its burden, the non-moving party must then go beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial. Id. However, if the non-movant's response consists of nothing "more than a repetition of his

16

conclusional allegations," summary judgment is not only proper, but required. Morris v. Ross, 663 F.2d 1032, 1034 (11th Cir. 1981), cert. denied, 456 U.S. 1010 (1982).

### A. The Wanes' Action to Quiet Title

The Wanes assert that they are entitled to summary judgment on their action to quiet title based on the following assertions: (1) they were never informed of the identity of their lender; (2) there was only one witness present at the loan closing; (3) Bank United, N.A. has not paid the documentary stamps; (4) The Loan Corporation lacked a Florida business license; (5) the Assignment of the Mortgage was ineffective because the signature of Jennifer Jones was fraudulent, and even if not fraudulent, Ms. Jones had no authority to effect an assignment under Florida Statute § 629.01; (6) the Assignment of the Mortgage was back-dated; and (7) the interest rate, Yield Spread Premium, payments schedule, various fees, and finance charges were inaccurately disclosed. The Court has evaluated each basis and determines that the Wanes are not entitled to summary judgment on their action to quiet title.

### 1. Failure to Disclose Bank United as Lender

The Wanes have alleged that "Plaintiffs were never informed that the real lender of their loan was BankUnited

17

FSB.   The alleged mortgage and note show TLC as the lender; however, bank transfer data shows that the funds came from BankUnited FSB." (Doc. # 41 at ¶ 9).   On this basis, they seek an order finding that their Mortgage and Note are unenforceable, invalid, and void.

The Wanes' assertion that "the real lender" was never disclosed is a fallacy.   During this litigation, the Wanes have repeatedly asserted that they rescinded their Mortgage by sending a rescission letter to The Loan Corporation with a carbon copy to Bank United on August 30, 2009.   Their inclusion of Bank United on the rescission letter belies the Wanes' assertion that they were unaware of Bank United's status as their lender.

In addition, Bank United, FSB provided the Wanes with a First Payment Letter, which is before the Court. (Doc. # 151-3 at 18).   The First Payment Letter is on Bank United letterhead and directs the Wanes to remit all Mortgage payments to Bank United FSB.   Mr. Wane signed the First Payment Letter, acknowledging his receipt of such letter.   Thus, the Court determines that the Wanes' assertion that they did not know that Bank United, FSB was their lender is unsupported.

**2.   <u>Missing Witness at Closing</u>**

The Wanes assert that their Mortgage is a cloud upon their title and is otherwise invalid or unenforceable because only one witness was present at the closing. Florida law does not support their position. See <u>Raymar Dev. Corp. v. Barbara</u>, 404 So. 2d 813, 814 (Fla. 2d DCA 1981)("[I]t is no longer required that homestead mortgages be witnessed."); <u>Walker v. Jacksonville</u>, 360 So. 2d 52, 54 (Fla. 1st DCA 1978)("[U]nder the present constitution and statutes of the State of Florida two witnesses are not required to the execution of a mortgage of homestead property. Certainly the same is applicable to nonhomestead property."). Thus, the Court rejects the Wanes' assertion that their Mortgage is a cloud upon the title to their Property due to the absence of a second subscribing witness.

### 3. **Documentary Stamps**

The Wanes contend that "Bank United seeks to enforce an alleged promissory note and mortgage, however, Bank United failed to pay the required documentary stamp tax." (Doc. # 41 at 4). Bank United, N.A. contends that, since it has not filed a foreclosure counterclaim in this action, it is not required to show that it paid the documentary stamps. Even so, Bank United, N.A. has come forward with evidence that it paid the documentary stamps. Ms. Fallmann indicates in her

19

affidavit, "Bank United paid the documentary stamps on this loan. In fact, the HUD-1 signed by Mr. Wane shows that the documentary stamp taxes were paid in the amount of $1,400 for state tax/stamps and $800.00 for intangible tax." (Fallmann Aff. Doc. # 167-3 at 5, ¶ 21). The HUD-1 form is before the Court, and it reflects the payment of the documentary stamps. (Doc. # 151-3 at 22). Accordingly, the Wanes' argument concerning the payment of documentary stamps is unavailing.

### 4. <u>Licensure of The Loan Corporation</u>

The Wanes also contend that their loan is invalid by asserting that, at the time of closing, The Loan Corporation did not have a license to conduct business in the state of Florida. The parties have filed conflicting exhibits on this point. The Court need not resolve the conflict, however, because the Mortgage would not be rendered invalid even in the absence of appropriate licensure on the part of The Loan Corporation. <u>United National Bank of Miami v. Airport Plaza Ltd. Partnership</u>, 537 So. 2d 608, 610 (Fla. 3d DCA 1988), is on point. There, the court held that the failure of a broker to obtain a broker's license did not render the entire note and mortgage unenforceable. Even assuming that the Wanes are correct that The Loan Corporation lacked a business license, the failure of The Loan Corporation to possess the proper

20

business license does not entitle the Wanes to the relief that they are seeking.

### 5.  **Signature of Jennifer Jones**

The signature of Jennifer Jones, a former officer of The Loan Corporation, appears on the Assignment and Allonge.  The Wanes contend that their Mortgage is unenforceable, invalid, and void because Ms. Jones was not the vice president of The Loan Corporation, but was rather its secretary.  In support, the Wanes tender a 2006 Corporate Annual Report of The Loan Corporation labeling Ms. Jones as a Secretary.  In addition, the Wanes assert that her signature was forged.

Bank United, N.A. has come forward with the affidavit of Ms. Jones in which she attests:

> In September 2006, I served as the Corporate Secretary on the corporate records and the Vice President of Compliance for the Loan Corporation. On all of The Loan Corporation's loan closings, I listed myself as Vice President.  As part of my duties as Vice President and Corporate Secretary, when a loan was sold or assigned to a new lender, I was responsible for facilitating the assignment of mortgage and the allonge to the note in order to properly execute the sale of the loan.

(Doc. # 167-4 at 1, ¶¶ 4-6).

To the extent that there is a dispute regarding whether Ms. Jones was a vice president or a secretary, this Court does not need to resolve it.  Florida Statute § 692.01 provides

21

that "any corporation may execute instruments conveying, mortgaging, or affecting any interest in lands by instruments sealed with the common or corporate seal and signed in its name by its president or any vice president or chief executive officer. <u>Assignments, satisfactions, or partial releases of</u> <u>mortgages and acquittances for debts may be similarly executed</u> <u>by any corporate officer</u>." (Emphasis added).  Thus, whether Ms. Jones was the vice president or the secretary has no effect on the validity of the Mortgage, Assignment, and Allonge, because under Florida law, these instruments could be properly signed by any corporate officer, including a corporate secretary.

In addition, the Court resolves the issue of the validity of Ms. Jones' signature in Bank United, N.A.'s favor.  The Wanes simply assert, "the assignment of mortgage is a fraudulent fabrication." (Doc. # 41 at 5).  They supply no supporting evidence to bolster this far-fetched contention. Bank United, N.A., on the other hand, has come forward with Ms. Jones' affidavit in which she attests that she did, in fact, personally sign the documents in question. <u>See</u> (Jones Aff. Doc. # 167-4 at 2, ¶¶ 7(e),(h))("I had the authority to execute both the Allonge and the Assignment . . . . The signature on the Allonge and on the Assignment are indeed my

22

signatures and I signed the Allonge and the Assignment by hand."). The Wanes have failed to come forward with evidence beyond their own self-serving statements on this point.

### 6. "Back Dated" Assignment

The Wanes assert:

> [T]he loan closing took place at Plaintiffs' residence in the evening of September 15, 2006 between 7:00 pm and 8:00 pm. The Corporate Assignment of Real Estate Mortgage recorded on October 5, 2006 . . . allegedly transferred all interests of TLC in the underlying mortgage to Bank United FSB. The assignment was allegedly executed on September 15, 2006. In order for the Assignment to be properly executed on that day, it would have to be done around 9:00 pm.

(Doc. # 41 at 5). The Wanes' argument presupposes that all bank work occurs during normal business hours.

However, in this case, Ms. Jones indicates in her affidavit, "On several occasions in 2006, I stayed at my office at The Loan Corporation after regular business hours (sometimes, even as late as 11:00 p.m.), in order to sign assignments of loans and allonges to notes on behalf of the The Loan Corporation." (Jones Aff. Doc. # 167-4 at 2, ¶ 7(k)). The Wanes cannot prove that the documents in question were backdated or otherwise improperly executed simply because they were executed after the close of business.

### 7. Improper Disclosures

Pointing to Good Faith Estimates on file, the Wanes assert that the interest rate, the Yield Spread Premium, the payment schedule, finance charges, and various fees were improperly disclosed. These allegations are completely unsupported by evidence in the record and do not provide a basis for invalidation of the Wanes' Mortgage.

Mr. Wane signed the first Good Faith Estimate on the date that he applied for the loan (August 16, 2006) and he signed the second Good Faith Estimate on the date of the closing (September 15, 2006). It appears that the Wanes are relying on the first Good Faith Estimate, which was superseded by the second Good Faith Estimate. The Court roundly rejects the Wanes' attempt to prove improper disclosures based on the contents of either Good Faith Estimate. The Good Faith Estimates are just that, estimates. Each Good Faith Estimate on file states: "The information provided below reflects estimates of the charges which you are likely to incur at the settlement of your loans. The fees listed are estimates-- actual charges may be more or less. . . . The HUD-1 settlement statement will show you the actual cost for items paid at settlement." (Doc. # 41-12; Doc. # 151-3 at 28).

Furthermore, there can be no sound argument that the Wanes were misinformed concerning their payment schedule. The

24

Wanes signed an Adjustable Rate Note and Mortgage.  There was no requirement that the payments remain the same.  Rather, as its name implies, the payments and the interest rate were adjustable and subject to change.  Here, the Wanes signed a TIL disclosure explaining that the monthly payments for the first twelve months would be $1,049.69; for the next twelve months would be $1,128.42; for the next nine months would be $1,213.05; and for the next 447 months would be $3,264.29. (Doc. # 251-3 at 30).  The Note also reflected that the initial monthly payment was to be $1,049.69 based on 1.2000% interest and was on a schedule to change on November 1, 2007, and "on the same day every twelfth (12th) month thereafter." (Doc. # 49-1 at 3).[8]   Tellingly, the Wanes sought to rescind the Mortgage when their payments were set to escalate to $3,264.29.  Their attempt at rescission was unavailing and they found themselves in default.  They claim that they were ill-advised concerning this scheduled change and other matters presented in the Good Faith Estimates; however, the

---

[8] The top of the Note prominently states in bold capitalized letters: "**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE, MY MONTHLY PAYMENTS, AND MY PRINCIPAL BALANCE. . . . MY INITIAL REQUIRED MONTHLY PAYMENT AMOUNT WILL NOT BE SUFFICIENT TO PAY THE INTEREST THAT ACCRUES UNDER THIS NOTE.  THE PRINCIPAL BALANCE OF THIS NOTE MAY INCREASE TO AN AMOUNT THAT IS LARGER THAN THE AMOUNT THAT I ORIGINALLY BORROWED.**" (Doc. # 49-1 at 2).

disclosures before the Court show that the Wanes were fully apprised of all relevant terms, and that they agreed that certain terms, including the interest rate, were subject to change during the course of the loan.

Having addressed each of the Wanes' contentions, the Court denies the Wanes' Motion for Summary Judgment as to their action to quiet title. The Wanes have not supported their action to quiet title with any evidence beyond self-serving affidavits and mere bluster.  This Court determines that their action is completely without merit. Accordingly, the Court finds that the Mortgage encumbering the Wanes' Property held by Bank United, N.A. is valid and enforceable and constitutes a valid and enforceable lien on the Wanes' Property.  The Court grants Bank United, N.A.'s Motion for Summary Judgment as to the Wanes' action to quiet title.  The Court will now undertake its analysis of Bank United, N.A.'s Motion for Summary Judgment on its counterclaims for breach of note and money lent.

**B.** **Bank United, N.A.'s Counterclaims**

Bank United, N.A. has asserted counterclaims against the Wanes for breach of note and money lent.  Under Florida law, the elements for a breach of contract action are "(1) a valid contract; (2) a material breach; and (3) damages." J.J.

Gumberg Co. v. Janis Servs., Inc., 847 So. 2d 1048, 1049 (Fla. 4th DCA 2003).  Along the same lines, "an action for money lent is an action at law which lies whenever there has been a payment of money from the plaintiff to the defendant as a loan." Paladin Shipping Co. v. Star Capital Fund, LLC, No. 10-21612, 2010 U.S. Dist. LEXIS 110805, at *4-5 (S.D. Fla. Oct. 19, 2010)(internal citation omitted).  The elements necessary to state a claim for money lent are: "(1) money was delivered to the defendant, (2) the money was intended as a loan, and (3) the loan has not been repaid." Id.

The evidence before the Court amply satisfies the elements for each counterclaim.  The Court finds that Bank United, N.A. is entitled to summary judgment on its counterclaim for breach of note because it had a valid contract with the Wanes, the Wanes breached the contract by failing to make payments when due, and Bank United, N.A. incurred damages as a result.  Likewise, Bank United, N.A. is entitled to summary judgment on its counterclaim for money lent.  It cannot be disputed that $400,000.00 was delivered to the Wanes as a loan and that the loan has not been repaid. There are no genuine disputes of material fact pertaining to the satisfaction of each of these elements.

In addition, the Court determines that the Wanes' far-fetched and unsupported "affirmative defenses" to the counterclaims are baseless.[9]   The Wanes have provided an impressive list of seventeen such defenses; however, more is required.   In opposing a motion for summary judgment, the non-movant may not rest solely on the pleadings, but must show by affidavits, depositions, answers to interrogatories, and admissions that specific facts exist demonstrating a genuine issue for trial. <u>See</u> Rule 56, Fed. R. Civ. P.   A mere scintilla of evidence supporting the opposing party's position will not suffice; instead, there must be a sufficient showing that the jury could reasonably find for that party. <u>Walker v. Darby</u>, 911 F.2d 1573, 1577 (11th Cir. 1990).

Thus, the Wanes cannot meet their burden by simply enumerating affirmative defenses; such defenses must be supported by evidence.   Here, the Wanes are without even a scintilla of evidence in support of their position.   They have

---

[9] A true affirmative defense is "one that admits to the complaint, but avoids liability, wholly, or partly, by new allegations of excuse, justification or other negating matters." <u>Bluewater Trading, LLC v. Willmar USA, Inc.</u>, No. 07-cv-61284, 2008 U.S. Dist. LEXIS 108191, at *2 (S.D. Fla. Sept. 9, 2008).   Rule 8(c)(1) includes a list of affirmative defenses, such as estoppel, laches, res judicata, and waiver. The Wanes' purported affirmative defenses are not affirmative defenses at all, but rather a restatement of their ill-fated theory of the case.

tendered their self-serving affidavits, which are not helpful.
In addition, they have supplied the Court with documents, such
as the Assignment and the state court record, which are
already before the Court and do not bolster their untenable
position.   These documents actually support Bank United,
N.A.'s position.  Thus, the Court finds that Bank United, N.A.
is entitled to summary judgment on its counterclaims and
denies the Wanes' Motion for Summary Judgment to the extent it
is asserted as to such counterclaims.

IV.  **The Matter of The Loan Corporation**

At this juncture, only the Wanes' claims against The Loan
Corporation remain to be decided. The Loan Corporation is an
inactive corporation. (Doc. # 92 at 4).   Consequently, The
Loan Corporation has failed to appear in this action, and that
failure has resulted in the entry of a Clerk's default against
The Loan Corporation. (Doc. # 79).  On September 25, 2012, the
Wanes filed a motion for default judgment against The Loan
Corporation. (Doc. # 87).  The Court denied the motion without
prejudice on December 6, 2012, and suggested that the Wanes
may "file a renewed motion for default judgment after the
related claims in this matter have been resolved." (Doc. #
152 at 4). That time has come.  Although the Court suspects
that the Wanes will be unable to prevail against The Loan

Corporation under the ineffective Second Amended Complaint (Doc. # 41), the Court will not foreclose them of the opportunity to file a motion for default judgment. The Wanes have until and including March 14, 2013, to file a renewed motion for default judgment against The Loan Corporation. Failure to do so will result in the finding that the Wanes have abandoned their claims against The Loan Corporation.

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

(1)  Bank United, N.A.'s Motion for Summary Judgment (Doc. # 151) is **GRANTED.**

(2)  The Wanes' Motion for Summary Judgment (Doc. # 155) is **DENIED.**

(3)  The Wanes' Motion to Strike Bank United N.A.'s Motion for Summary Judgment (Doc. # 162) is **DENIED.**

(4)  Bank United, N.A.'s Motion to Strike Plaintiffs' Affidavits filed in conjunction with Plaintiffs' Response in Opposition to Bank United, N.A.'s Motion for Summary Judgment (Doc. # 166) is **GRANTED IN PART** to the extent the Court strikes the affidavit of Merlande Wane.

30

(5)   The Wanes have until and including March 14, 2013, to file a renewed motion for default judgment against The Loan Corporation.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this <u>22nd</u> day of February 2013.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies: All Counsel and Parties of Record

31